_____

No. 13-55868
_____

**UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**
_____

**ANIMAL LEGAL DEFENSE FUND, ET AL.,**
Plaintiffs—Appellees,
v.
**UNITED STATES DEPARTMENT OF AGRICULTURE, ET AL.,**
Defendants—Appellants.
_____

On Appeal from United States District Court for the Central District of California;
D.C. No 12-cv-04028-ODW
Hon. Otis D. Wright, II, Presiding
_____

**BRIEF OF AMICUS CURIAE HUDSON VALLEY FOIE GRAS IN SUPPORT OF DEFENDANTS APPELLANTS-CROSS-APPELLEES URGING AFFIRMANCE.**
_____

CROSS LAW CORPORATION
DANIEL J. CROSS
925 B Street, Suite 305,
San Diego, CA, 92101
Phone: (619) 756-6390

Attorneys for Amicus Curiae: Hudson Valley Foie Gras, a New York limited
liability company.

**CORPORATE DISCLOSURE STATEMENT (FRAP 26.1)**

Pursuant to Federal Rules of Appellate Procedure 26.1, Amicus Curiae Hudson Valley Foie Gras, LLC ("HVFG") states that it is a Limited Liability Company based in the State of New York.

HVFG is a privately held company and shares have not been issued to the public.

# TABLE OF CONTENTS

Page

Table of Citations …………………………………………….. iv

Statement of Jurisdiction ………………………………….. 1

Counter-Statement of Issues ………………………………. 1

Statement of the Case …………………………………… 1

Statement of Facts …………………………………………. 3

    1. Background of HVFG and USDA ………………………… 3

    2. The Components of USDA's Decision ……………………. 5

    3. The Actual Motivation for this Litigation …………………. 7

    4. ADLF (Appellant) Statement of Facts ………………………8

Summary of Argument …………………………………… 10

Argument …………………………………………… 12

I.  THE DISTRICT COURT PROPERLY DISMISSED THE COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION ……………………………………….... 12

II. IF THE DISTRICT COURT HAD JURISDICTION, THIS COURT SHOULD NOT REACH THE MERITS OF THE COMPLAINT AND THIS COURT SHOULD REMAND THE CASE TO THE DISTRICT COURT FOR FURTHER PROCEEDINGS BY REJECTING THE APPELLANTS' REQUEST THAT THIS COURT REACH THE MERITS……… 21

Conclusion …………………………………………… 29

Certificate of Compliance ……………………………………….... 30

Statement of Related Cases ……………………………………….. 31

Certificate of Service ……………………………………………... 32

# TABLE OF CITATIONS

## Cases

Page

*Alcaraz v. INS*,
  384 F.3d 1150 (9th Cir. 2004) ……………………………………….. 14

*American Horse Prot. Ass'n v. Lyng*,
  812 F.2d 1 (D.C. Cir. 1987) …………………………………………… 26, 27

*The Animal Legal Defense Fund, et al v.*
 *Aubertine, Commissioner, et al*,
  New York Appellate Division, 3d Dept. pending …………………… 3

*Asarco Inc v. EPA*,
  616 F.2d 153 (9th Cir. 1980) ……………………………………… 20

*Bell v. Hood*,
  327 U.S. 678 (1946) …………………………………………….….. 11

*Center for Biological Diversity v. Veneman*,
  394 F.3d 1108 (9th Cir. 2005) ……………………………………….. 13

*Edison Elec Inst v. EPAm*,
  996 F.2d 326 (D.C. Cir. 1993) …………………………………… 15,16

*Heckler v. Chaney*,
  470 U.S. 821 (1985) ………………………………….……… 1, 10, 13,
                                                           15, 17, 18

*Hotel & Rest. Emps. Union 217 v. J.P.Morgan Hotel*,
  996 F.2d 561 (2d Cir. 1993) ……………………………….… 22

*Kenney v. Glickman*,
  96 F.3d 1118 (8th Cir. 1996) ………………………….……… 16, 17, 18,
                                                              19

*Knappenberger v. City of Phoenix*,
  566 F.3d 936 (9th Cir. 2009) …………………………….…..... 13

*KOLA Inc v. United States*,
   882 F.2d 361 (9th Cir. 1989) …………………………….…………… 19

*MacDonald v. Grace Church Seattle*,
   457 F.3d 1079 (9th Cir. 2006) …………………………….………….. 12

*Massachusetts v. EPA*,
   549 U.S. 497 (2007) …………………………………….………… 14, 26, 27

*Occidental Eng'g Co v. INS*,
   753 F.2d 766 (9th Cir. 1985) …………………………….………… 24

*Proietti v. Levi*,
   530 F.2d 836 (9th Cir. 1976) …………………………….………… 22

*Ranchers and Cattlemen's Legal Fund v. United States*,
   415 F.3d 1078 (9th Cir. 2005) …………………………….……….. 9

*Steel Co v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) …………………………………….………... 11

*United States ex rel Accardi v. Shaughnessy*,
   347 U.S. 260 (1954)…………………………………….……….. 14

## Statutes and Rules

5 U.S.C. 701(a)(2) …………………………………………… 1, 18

5 U.S.C. 706 …………………………………………….. 14

21 U.S.C. 451 ……………………………………………… 13

21 U.S.C. 451, et seq ……………………………………… 8

21 U.S.C. 453(g) …………………………………………… 1

21 U.S.C. 453(g)(3) …………………………………….. 7

28 U.S.C. 1291 …………………………………………………….. 1

Cal Health & Safety Code §§ 25980-25984 ……………………………. 6, 8, 28

**Other**

9 CFR 381.83 ………………………………………………………… 26

## STATEMENT OF JURISDICTION

The district court lacked subject matter jurisdiction because an agency's decision to not "take enforcement action [is] presumed immune from judicial review under 5 U.S.C. 701(a)(2)." *Heckler v. Chaney*, 470 U.S. 821, 832 (1985). The district court recognized its lack of jurisdiction and properly dismissed Appellants' complaint.

This Court has appellate jurisdiction over the district court's decision pursuant to 28 U.S.C. 1291.

## COUNTER-STATEMENT OF ISSUES

I. WHETHER THE DISTRICT COURT PROPERLY DISMISSED THE COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION?

II. IF THE DISTRICT COURT HAD JURISDICTION, WHETHER THIS COURT SHOULD REACH THE MERITS OF THE COMPLAINT OR WHETHER THIS COURT SHOULD REMAND THE CASE TO THE DISTRICT COURT FOR FURTHER PROCEEDINGS BY REJECTING THE APPELLANTS' REQUEST THAT THIS COURT REACH THE MERITS?

## STATEMENT OF THE CASE

ALDF (used herein to refer to all Appellants) filed a petition with the United States Department of Agriculture ("USDA") seeking to have foie gras declared an adulterated food. "Adulterated" is a term of art which is defined by the Poultry Product Inspection Act of 1957 ("PPIA") at 21 U.S.C. 453(g). (AD 22-23)[1] As a

---

[1] "AD" refers to the addendum filed by ALDF pursuant to Circuit Rule 28-2.7

general matter, a foodstuff is "adulterated" if its consumption is injurious to human health. *Id.*

USDA declined to take any action on the ALDF petition.[2]

ALDF responded by seeking judicial review in the United States District Court for the Central District of California.[3] ALDF filed a Motion for Summary Judgment[4] and USDA and Hudson Valley Foie Gras ("HVFG") filed a Motion for Judgment on the Pleadings or Summary Judgment.[5] The district court granted USDA and HVFG's Motion.[6] The district court reasoned that while ALDF had styled their petition as a Petition for Rulemaking, it was actually a request for enforcement of existing statutes, i.e., USDA already had the authority to prevent any adulterated poultry product from entering the human food supply and therefore a new rule was unnecessary. Since a decision to not take an enforcement action is immune from judicial review, the district court reasoned that it lacked subject matter jurisdiction and that as a result, USDA's and HVFG's Motion should be granted.

---

[2] The denial is reprinted in ALDF's Excerpts from Record, Vol. 2, p. 170

[3] Case No. 2:12-cv-04028-ODW(PJWx), Hon. Otis D. Wright, II

[4] Docket Entry 22

[5] Docket Entries 26 and 29

[6] Docket Entry 45

ALDF has now sought review in this Court.

## STATEMENT OF FACTS

### 1. Background of HVFG and USDA

HVFG is the largest domestic producer of foie gras. HVFG is the real target of the ALDF's attempts to have foie gras declared adulterated.[7] If ALDF were successful, HVFG would be forced out of business.

The district court record documents the relationship between HVFG and USDA.[8] Specifically:

A. Before HVFG can legally sell foie gras, HVFG must request that USDA inspect their ducks and certify that the foie gras derived from the ducks' livers is safe for human consumption;

B. HVFG made the necessary application and was approved for inspection;

C. USDA set up an office at HVFG's farm so that it could supervise the entire process by which the ducks were: a) raised for slaughter; b) slaughtered; and, c) processed to produce foie gras;

---

[7] HVFG is based in New York State. ALDF is pursuing a similar course of action in New York by seeking to compel the New York State Department of Agriculture and Markets to declare foie gras adulterated under New York law. That Agency refused the demand, and the New York State Supreme Court affirmed the Agency's decision. The state litigation is pending in the New York Appellate Court where briefing is not yet completed. *The Animal Legal Defense League, et al v. Aubertine, Commissioner, et al.* Appellate Division, Third Judicial Department. HVFG is a named party in that litigation.

[8] Docket Entry 31

D.  HVFG explained to USDA how force-feeding decisions were made;

E.  The ducks that are force-fed are mature ducks, i.e., they have stopped growing;

F.  The force-feeding process is designed to mirror the feeding patterns of wild migrating ducks, i.e., wild ducks that are about to begin a migration will eat additional food to sustain themselves during the migration;

G.  The ducks are force-fed approximately 600 grams of food per day;

H.  The result of the force-feeding is that the duck's liver is enlarged and fattened;

I.  The fatty liver is what is used to produce foie gras;

J.  After examining HVFG's explanation and considering the input of USDA inspectors who were on-site at HVFG's farm, USDA approved a label for "fatty duck livers."  This label is found on the packaging used for the final product before shipment;

K.  USDA inspectors conduct both an ante and post mortem inspection of the ducks;

L.  If the duck does not pass the ante mortem inspection, it will not be allowed to enter the slaughterhouse (unless and until it passes a subsequent inspection);

M.  If the duck does not pass the post mortem inspection, its carcass will be

4

destroyed and no foodstuffs derived from that carcass will enter the food supply; and,

N.   It is only when the duck passes both the ante and post mortem inspections that HVFG is cleared to process the duck for foodstuffs (foie gras and meat) and to ship the foodstuffs into the food supply.

This information demonstrates USDA has personal knowledge and experience about how ducks are raised and slaughtered to produce foie gras. USDA has determined that the duck liver and the meat are safe for human consumption.   This determination is made by hands-on inspectors physically located at HVFG's farm.

Said differently, USDA has had personal and long-term experience with foie gras that has produced evidence that refutes ALDF's allegations about foie gras being an adulterated foodstuff.  Thus USDA has a solid basis for making a decision that was neither arbitrary nor capricious.

## 2.  The Components of USDA's Decision

USDA decided to take no action on ALDF's request for a determination that foie gras be declared adulterated.  That decision had the following components:[9]

A.  The Food Safety and Inspection Service ("FSIS") reviewed the petition submitted by the animal-rights activists;

---

[9]USDA determination letter is included in ALDF's Excerpts, Vol. 2, p. 170

B. The petition requested FSIS or USDA to prohibit the sale of foie gras;

C. The FSIS "determined that the presence of fatty change in a duck or goose liver used to produce foie gras alone does not render the foie gras adulterated or otherwise unfit for human food;"

D. Additional research is needed to support the petition's arguments regarding potential human health effects resulting from the consumption of foie gras;

E. The petition asserts that force-feeding causes ducks and geese to contract "hepatic lipidosis" (a fatty liver condition);

F. The petition asserts that hepatic lipidosis makes the bird diseased and the liver unfit for human food;

G. USDA (FSIS) disagreed;

H. FSIS considered the condition of duck and goose livers and concluded that the livers could appear to be affected by hepatic lipidosis;

I. However, FSIS also concluded that this was a physiologic condition, "i.e., overwhelming of the hepatocyte's ability to process and export fat" (as opposed to a pathological (diseased) condition);

J. Said differently, the appearance of the liver does not make it diseased;

K. There are situations where hepatic lipidosis could be considered a disease, but foie gras produced from a duck's liver is not one of those situations;

6

L.  An article attached to the petition reported results in mice injected with or fed amyloid extracted from foie gras;

M.  FSIS concluded the article contained nothing new that would apply to waterfowl where it is fairly common to find amyloidosis in ducks;

N. The study is also silent about any relationship between "the presence of amyloid in foie gras or the potential effect on human health;"

O.  Additional research would be necessary before any such linkage could be established; and,

P.  FSIS determined foie gras made from livers of force-fed poultry is not "unsound, unhealthful, unwholesome, or otherwise unfit for human food." 21 U.S.C. 453(g)(3) (AD22-23)

## 3.  The Actual Motivation for this Litigation

HVFG Operations Manager Marcus Henley's declaration states HVFG has been involved in litigation with animal-activist groups for more than six years.[10] The goal of each federal and state lawsuit was to drive HVFG out of business.

The Declaration (and websites operated by ALDF and other animal activists) reveals the activists' mission is to protect animals from perceived cruelty.  In HVFG's case, the activists allege that force-feeding ducks amounts to cruelty, and their goal is to eliminate that perceived cruelty by putting HVFG out of business.

---

[10] Docket Entry 31

The exhibits submitted by ALDF to USDA universally speak of how force-feeding allegedly affects the health of ducks. However, there is no meaningful or fact-based linkage between duck health and the safe human consumption of foie gras.

USDA explicitly relied on the lack of linkage when reaching its decision on ALDF's petition. Moreover:

A. This Court can take judicial notice that foie gras has been safely consumed by humans for more than 5,000 years with no meaningful evidence linking foie gras to an actual health risk to humans; and,

B. USDA's sphere of interest is human health, 21 U.S.C. 451, et seq (AD19, et seq), not alleged animal cruelty.[11] By contrast, ALDF's sole interest is preventing cruelty to force-fed ducks. USDA has no institutional interest in whether force-feeding is cruel to the ducks because that alleged cruelty does not affect the integrity of the food supply.

**4. ALDF Statement of Facts**

ALDF's brief contains a lengthy section entitled "Statement of Facts." (Br., pp. 6-17) If the merits come into play in this appeal, HVFG objects/responds to a

---

[11] California has banned foie gras. (Br., p. 6) A review of the legislation reveals the ban is based on activists' claims that force-feeding is cruel. Cal. Health & Safety Code §§ 25980-25984 The legislation and the animal activists' involvement demonstrate ALDF's true motivation is not protecting the integrity of the human food supply.

8

number of assertions found in the following sections:

A. "Force-Feeding Induces Liver Disease in Ducks and Geese." (Br., pp. 7-8)  USDA concluded the referenced liver appearance was caused by physiological reasons (extra food) rather than pathological reasons (disease).  USDA's position is entitled to deference.  *Ranchers and Cattlemen's Legal Fund v. United States Department of Agriculture*, 415 F.3d 1078, 1093 (9th Cir. 2005) (deference is to be shown to agency expertise especially when the decision involves a high level of technical expertise).  Moreover, ALDF presented no credible evidence of a link between consuming foie gras and danger to humans.

B.  "Force-Feeding Causes Various Other Serious Conditions." (Br., pp. 8-11)  USDA, which inspects every HVFG duck (pre and post mortem), has not found any evidence that ducks' livers are affected (in terms of danger to humans) by these alleged "serious conditions."

C.  "Ducks Removed from Foie Gras Facilities Are Diseased." (Br., p. 11)  This section also fails to address any correlation between the duck's alleged condition and human health.

D.  "Force-Feeding Is Fatal." (Br., pp. 11-12)  All ducks at issue are raised for slaughter.  Whether they are force-fed or not, the ducks will die.  Even if force-feeding is fatal, the integrity of the human food supply is not compromised.

E.  "Human Consumption of Foie Gras Carries Serious Health Risks." (Br.,

pp. 12-13) USDA's determination letter concluded the studies presented did not establish a sufficient link between the consumption of foie gras and real dangers to human health. Rather, these studies speak in terms of highly speculative risks. Foie gras has been safely consumed by humans for 5,000 years and there is no evidence linking consumption to impaired health. Allegations of potential "human health risk" do not justify forbidding foie gras.

## SUMMARY OF ARGUMENT

The district court correctly concluded that it lacked subject matter jurisdiction. Appellants styled their petition to USDA as a Petition for Rulemaking. However, the district court correctly concluded that there was no need for rulemaking because the existing statutes, rules, and regulations already supplied USDA with the power to exclude any adulterated foodstuff from the marketplace, i.e., there was no need for a new rule excluding foie gras as adulterated because USDA already had the authority to act even in absence of any new rule. For this reason, the district court correctly concluded ALDF was actually asking USDA to begin an enforcement action to prevent foie gras from entering the food supply. USDA's refusal to act amounted to a decision to not take enforcement action. Under *Heckler v. Chaney*, 470 U.S. 821, 832 (1985), such a decision is not subject to judicial review and ALDF's case was properly dismissed.

In addition and contrary to ALDF's arguments, the fact that USDA treated

ALDF's petition as one for rulemaking (as opposed to a request for enforcement) is irrelevant to this appeal. A district court always has the obligation to assure that it has subject matter jurisdiction regardless of whether any party challenges the district court's jurisdiction. *Steel Co., v. Citizens for a Better En'vt,* 523 U.S. 83, 94 (1998) (a federal court cannot assume subject matter jurisdiction to reach the merits of the case); *Bell v. Hood*, 327 U.S. 678, 682 (1946) (a district court must first determine whether it has jurisdiction before it can decide whether the complaint states a claim). As these cases make clear, the district court's decision to *sua sponte* dismiss on jurisdictional grounds was completely proper.

If this Court disagrees and concludes that the district court did have jurisdiction, it is HVFG's position that the case should be remanded to the district court for further proceedings. ALDF argues that this Court should decide the merits. However, this argument ignores the fact that one of the unresolved issues in the district court was standing. HVFG had argued that ALDF had no standing because, among other things, there was no threat of actual or imminent injury, i.e., the alleged risk to human health was purely speculative. The standing issue is not before this Court. If ALDF lacks standing, the merits of the case should not be adjudicated either in this Court or the district court.

Finally, if this Court elects to address the merits, there was ample information in the record to establish that USDA's refusal to act was neither

11

arbitrary nor capricious.  Among other things:

A.  USDA has had a lengthy relationship with HVFG and was well familiar with the fact that the ducks raised by HVFG were force-fed;

B.  USDA had a physical presence at HVFG's farm and conducted both pre and post mortem examinations of the ducks before any part of the duck was allowed to enter the food supply; and,

C.  USDA gave due consideration to ALDF's request and USDA's denial gave sufficient reasons to support its decision.

In sum, HVFG is respectfully asking this Court to affirm the district court's jurisdictional ruling.  Alternatively, if this Court concludes that the district court had jurisdiction, HVFG is respectfully asking this Court to remand for further proceedings.

**ARGUMENT**

## I.  THE DISTRICT COURT PROPERLY DISMISSED THE COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION

**Standard of Review:** Decisions on a Rule 12 motion for judgment on the pleadings are reviewed de novo.  *MacDonald v. Grace Church Seattle*, 457 F3d 1079, 1081 (9th Cir. 2006) Judgment on the pleadings is properly granted when, taking all of the allegations as true, the moving party is entitled to judgment as a

matter of law. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 939 (9th Cir. 2009) A Court's decision that it lacks subject matter jurisdiction is reviewed de novo. *Center for Biological Diversity v. Veneman*, 394 F.3d 1108, 1110 (9th Cir. 2005)

**Discussion:** 21 U.S.C. 451 (AD19) states in relevant part that "[i]t is essential...that the health and welfare of consumers be protected by assuring that poultry products distributed to them are wholesome [and] not adulterated." ALDF cites a number of statutes and regulations that give USDA the authority to prevent adulterated poultry products from entering the human food supply (Br., pp. 4-6), leading the district court to conclude ALDF's petition was intended to persuade USDA to initiate enforcement proceedings against foie gras producers. Accordingly, *Heckler v. Chaney, supra,* controls, and USDA's decision is not subject to judicial review. A review of ALDF's petition and its exhibits[12] supports this position.

Nothing in ALDF's brief negates this.

While ALDF had the right to petition USDA for the issuance of a rule (Br., p. 20), ALDF never explained why a new rule is needed when USDA already had applicable rules in effect. Even ALDF argues that existing statutes, rules, and regulations permit USDA to prevent adulterated foods from entering the human food supply. (Br., pp. 4-6)

---

[12] ALDF's Excerpt Vol. 2, pgs. 39-169

In *United States ex rel Accardi v. Shaughnessy*, 347 U.S. 260 (1954), the United States Supreme Court stated the principle that rules promulgated by federal agencies, which regulate the rights and interests of others, are controlling on the agency. *Alcaraz v. INS,* 384 F.3d 1150, 1162 (9th Cir. 2004) (collecting cases) Here, existing statutes and rules regarding the prevention of adulterated foods from entering the food supply are controlling on USDA. But ALDF did not convince USDA foie gras is adulterated. That was the purpose of the extensive submission of exhibits.

Since ALDF was actually seeking enforcement rather than rulemaking, USDA's refusal to act was not an "agency decision" subject to review under Section 706 of the APA. Regardless of whether USDA treated ALDF's petition as a petition for rulemaking (Br., p. 21), the district court's obligation is to determine for itself whether it has subject matter jurisdiction. The parties' failure to make jurisdictional arguments does not affect the district court's responsibility.

ALDF cites *Massachusetts v. EPA,* 549 U.S. 497 (2007) and argues that "the Supreme Court did not suggest that the matter was *unreviewable* simply because once such regulations become law certain practices become unlawful." (Br., p. 21) But *Massachusetts* does not apply here. In *Massachusetts*, there were no regulations regarding motor vehicle emissions and greenhouse gases. The petitioners were asking the EPA to promulgate such regulations. By contrast, in

14

the instant case, regulations were in place and ALDF was effectively asking USDA to enforce those regulations against foie gras.

ALDF argues that the district court "erroneously applied *Heckler v. Chaney."* (Br., pp. 22-25)  But the substance of ALDF's petition was not a "garden variety petition for rulemaking" as it suggests.  (Br., p. 22) Rather, the substance of the petition reveals that ALDF was asking USDA to initiate enforcement action against foie gras.  The petition was not in reality addressing whether "a particular poultry product meets the definition of the statute." (Br., p. 22)  Rather, ALDF was actually asking USDA to enforce existing rules and regulations against an allegedly adulterated poultry product.

ALDF argues that *Heckler* was different from this matter because the request made there was pursuant to specific enforcement provisions of the EPA regulations. (Br., pp. 24-25)  The distinction is irrelevant.  If it were otherwise, any petitioner who was seeking an enforcement action could preserve judicial review by simply requesting a new rule instead of the enforcement action actually desired.  The district court rejected this type of argument as elevating form over substance.

ALDF relies on *Edison Elec Inst v. EPA*, 996 F.2d 326 (D.C. Cir. 1993) to argue that it was not challenging "the manner in which USDA had chosen to exercise its enforcement powers under existing regulations."  But *Edison* is distinguishable.  There, the EPA was not proposing to enforce the regulations at

15

issue. Rather, the EPA's interpretation related to substantive requirements of law. That simply is not the type of discretionary judgment at issue here.

ALDF next cites *Kenney v. Glickman*, 96 F.3d 1118 (8th Cir. 1196) for the proposition that *Heckler* only applies to "individual case-by-case determinations of when to enforce regulations rather than permanent policies and standards." (Br., pp. 24-25) HVFG submits that *Kenney* is distinguishable. The issue in *Kenney* was regulations that treated meat and poultry differently. The plaintiffs were arguing that there was no basis for distinguishing between the two foodstuffs and that the regulations should be the same. Since the interpretation was a "permanent policy or standard" that applied to all meat and poultry products, enforcement was not the issue. Rather, a global determination had been made to treat the two foodstuffs differently.

By contrast, in the instant case, a permanent standard or policy is not at issue. Rather, ALDF was requesting USDA to enforce its existing rules regarding adulterated poultry against foie gras.

ALDF's repeated efforts to characterize their enforcement request as a garden-variety petition for rulemaking are simply without merit for the reasons stated *supra*. (Br., p. 25) As the district court reasoned, form should not be elevated over substance.

ALDF next argues "The Determination of Whether Force-Fed Foie Gras Is

Adulterated Under the PPIA Is Not Otherwise 'Committed to Agency Discretion By Law.'" (Br., pp. 25-31)  If ALDF's petition was actually a request to initiate enforcement action, it is unnecessary to consider these arguments because of *Heckler v. Chaney, supra.*  However, in the event this Court disagrees, other aspects of the "committed to agency discretion by law" exception to judicial review dictate that judicial review of USDA's decision is not available to ALDF.

ALDF relies heavily on *Kenney v. Glickman*, 96 F.3d 1118 (8th Cir. 1996) to support its arguments. (Br., pp. 26-28)  In *Kenney,* poultry consumers challenged USDA's regulatory scheme governing meat and poultry processing.  The Poultry Products Inspection Act and the Federal Meat Inspection Act ("FMIA") are fundamentally identical.  However, USDA treated poultry and meat differently in several important respects that made a poultry carcass more valuable while making a meat carcass less valuable.  The issue there was whether the different treatment for poultry and meat was justified.

USDA refused to change its standards and the poultry consumers sought judicial review.  The district court concluded that USDA decisions were not reviewable but the Court of Appeals concluded otherwise. The Court of Appeals recognized that the goals of the poultry and meat inspection acts are identical in that both inspection acts provide that the purpose of inspections was to ensure carcasses are not "adulterated" or "misbranded."

17

The court recognized that an agency's decision not to prosecute or enforce is a decision "committed to the agency's absolute discretion" under Section 701(a)(2), citing *Heckler v. Chaney*, 470 U.S. 821, 831 (1985). Under *Heckler,* "enforcement decisions" are situations where the "agency must not only assess whether a violation has occurred, but whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action best fits the agency's overall policies, and indeed, whether the agency has enough resources to undertake the action at all," 470 U.S. at 831-832.

The *Kenney* court reasoned that USDA's decisions regarding the two acts were not *Chaney*-type enforcement actions. The Secretary had not decided "whether a violation had occurred, has not decided whether he will 'succeed' if he acts, and has not determined which 'technical violations' to act against. Rather, the Secretary adopted general permanent policies and standards the Secretary deems acceptable to implement the goals of the PPIA and FMIA." 96 F.3d at 1123.

The instant case does not involve any permanent policies or standards. Rather, it involves a decision about whether to enforce existing regulations against foie gras. This decision met all of the *Chaney* criteria for an enforcement decision because USDA had to decide whether a violation had occurred and, if so, whether to take action.

18

Because the *Kenney* court concluded that USDA's refusal to modify permanent policies or standards was not an enforcement-related decision, the Court went to the next step of determining whether the "no law to apply" exception applied. The court recognized that "law to apply" may be found in the underlying statute or in regulations by the agency interpreting the underlying statute. The Court reasoned that the PPIA and the Secretary's regulations under FMIA provided law to apply when deciding whether the Secretary acted arbitrarily or capriciously by requiring different processing for meat and poultry. 96 F.3d at 1124;

In this case, however, there is no law to apply. As explained supra, USDA based its decision, at least in part, on its conclusion that ALDF's scientific evidence did not persuade USDA that foie gras was adulterated. Scientific evaluation is within the technical expertise of USDA and does not involve legal questions for a reviewing court to examine.

Unlike *KOLA, Inc v United States*, 882 F.2d 361 (9th Cir. 1989), the statute and regulations here do not apply to the action (or, lack of action) taken by USDA. In *KOLA*, the regulations imposed specific obligations on the Forest Service when it was considering whether to issue special use permits. By contrast, in the instant case, the PPIA and its related regulations require USDA to protect the integrity of the human food supply, not the health of the ducks at issue. The other cases ALDF cites are equally distinguishable.

19

ALDF next argues "The Need to Consider an Agency's Scientific Conclusion is Not Sufficient Reason to Find an Agency's Action Unreviewable." (Br., pp. 31-32) ALDF cites *Am. Horse Prot. Ass'n Inc v. Lyng*, 812 F.2d 1 (D.C. Cir. 1987) for the proposition that an agency's decision can be reviewed even when the decision involved technical data and scientific conclusions.

But *Lyng* is distinguishable. The primary issue in *Lyng* was new and reliable scientific research that updated and modified the scientific research that was in place when the regulations were originally promulgated. The new research demonstrated a link between devices used on show horses and pain experienced by the horses. By contrast, in the instant case, the scientific research presented by ALDF did not establish any link between the health of ducks and the safety of duck liver for human consumption. While there may be cases where administrative issues involving scientific evidence warrant review, this is not one of them. The lack of scientific evidence addressing a link and USDA's expertise and personal experience with foie gras were the driving factors in USDA's analysis.

ALDF finally argues that their scientific evidence showed "that foie gras comes from diseased, disabled, and dying poultry." (Br., p. 32) However, that argument is based on animal-protection principles and not the safety of foie gras for human consumption. In the instant case, USDA properly determined, using its experience and scientific expertise, that foie gras is a safe food regardless of the

20

overall health of the duck.

## II. IF THE DISTRICT COURT HAD JURISDICTION, THIS COURT SHOULD NOT REACH THE MERITS OF THE COMPLAINT AND THIS COURT SHOULD REMAND THE CASE TO THE DISTRICT COURT FOR FURTHER PROCEEDINGS BY REJECTING THE APPELLANTS' REQUEST THAT THIS COURT REACH THE MERITS.

**Discussion:** The next section of ALDF's brief argues that USDA's decision was arbitrary, capricious, and contrary to law. (Br., pp. 32- 41)

If this Court agrees that the district court lacked subject matter jurisdiction, these arguments are moot. However, if this Court concludes that the district court had subject matter jurisdiction, the proper remedy would be to remand to the district court for further proceedings. ALDF argues that this Court should decide the merits of the denial. (Br., pp. 32-35)

ALDF lacked standing. The standing issue was neither addressed nor decided by the district court. This issue is not before this Court because the administrative record does not establish whether ALDF has standing to seek judicial review. The presence or absence of standing should be decided by the district court because the issue is not properly before this Court. Standing was raised but not decided by the district court because a decision was not needed given the jurisdictional bar invoked by the district court.

None of the cases cited by ALDF in their brief include an unadjudicated

21

claim of lack of standing. Moreover, each of the cases is distinguishable on other grounds as well.

For example, in *Asarco, Inc v. EPA*, 616 F.2d 153 (9th Cir. 1980) (Br., p. 33), the district court had decided the issue on the merits. This Court was thus in a position to evaluate the administrative record and the district court's reasoning. By contrast, no decision on the merits was reached in the instant case, and, if a remedy is to be granted, it should be a remand.

In *Proietti v. Levi*, 530 F.2d 836 (9th Cir. 1976) (Br., p. 33), this Court vacated the district court's decision and remanded. Contrary to ALDF's implication, the incompleteness of the administrative record was not the sole basis for the remand. Rather, this Court looked at the merits of the case, and decided that remand was appropriate.

ALDF relies on *Hotel & Rest. Emps. Union Local 217 v. J.P. Morgan Hotel*, 996 F.2d 561 (2d Cir. 1993) to support their argument that this Court should reach the merits. (Br., p. 33) However, the case is distinguishable and therefore does not support ALDF's arguments. In *Morgan*, the union and the hotel had entered into a contract that was intended to govern the procedures to be used during the union's efforts to organize the hotel's employees. That contract specifically provided for arbitration.

The parties disagreed on the outcome of the organization process, and,

among other things the hotel argued that the union had coerced employees to sign cards indicating that the employee favored the union.

Arbitration was sought as provided by the contract. The arbitrator deferred the coercion argument to the NLRB that found in favor of the union. The arbitrator then entered an award in favor of the union.

When the hotel would not accept the arbitrator's decision, the union sought judicial review. The district court ruled that it did not have jurisdiction. The Second Circuit disagreed and ruled that the district court and the NLRB had concurrent jurisdiction because of the contract between the parties and the arbitration provision. The Court then noted that courts should rarely interfere with what an arbitrator had done, and decided that the arbitration award should be enforced.

Contrary to ALDF's argument, there is nothing in this case which stands for some sort of universal holding that appellate courts should decide the merits when there are no factual issues to decide. Rather, the *Morgan* decision is based on labor law and legal rules surrounding the enforcement of arbitrator's decisions when both parties have agreed to arbitration. In the instant case, labor law does not apply, the parties did not contract, statutes did not control jurisdiction, and arbitration was not an issue. For these reasons, the case does not support ALDF's arguments because its procedural posture was completely different from the instant

23

case.

ALDF cites *Occidental Eng'g Co v. INS*, 753 F.2d 766 (9th Cir. 1985) in support of the argument that the district court has no facts to decide in the instant case. (Br., p. 34)  However, in *Occidental*, there had been hearings where the parties had an opportunity to present their views.  The agency was granted summary judgment, and the plaintiffs appealed.  The standard for summary judgment was framed in terms of the district court deciding whether the agency could reasonably have found the facts as it did.  In the instant case, there has been no hearing.  The parties have not had an opportunity to argue their positions.  The district court did not reach the merits or decide the standing issue.  *Occidental* does not support ALDF's argument that this Court should reach the merits because in *Occidental*, this Court merely affirmed what the district court had done.  This Court did not make any original decisions about the merits.

ALDF argues that if this Court reaches the merits, judicial resources will be saved. (Br., p. 34)  In n.6 on page 34, Appellants assert that the district court has "suggested" that it would rule against Appellants.  At the threshold, the district court did not reach the merits because of its jurisdictional decision.  There is no way of knowing how the district court will ultimately rule should this Court decide that the district court had jurisdiction.  The undecided standing issue is an important reason for this Court not to reach the merits.  It is HVFG's position that

if the jurisdiction question is resolved against the district court, the district court should be given the first opportunity to tackle the merits.

ALDF repeats their argument criticizing the district court for allegedly ignoring the "voluminous relevant evidence." (Br., p. 35) The two cases cited by ALDF do not require an agency to respond to each and every piece of evidence submitted. USDA specifically referenced the most relevant article, explained that none of the evidence submitted established that there was a linkage between the overall health of the duck and the safety of the duck's liver for human consumption, and invited ALDF to submit additional evidence if and when they had any to present. HVFG submits that that is sufficient.

ALDF states that foie gras "is *literally* the product of a dying, disabled, and diseased bird, the liver of which is unhealthful and unwholesome because it is inflamed, septicemic, and toxemic." (Br., p. 35) This quotation illustrates ALDF's focus is animal cruelty and not human health. Their claims about the condition of the duck's liver are speculative because there is no evidence that humans become ill after consuming foie gras. USDA inspects each and every duck, and USDA's technical expertise is entitled to deference.

ALDF argues that USDA did not give a satisfactory explanation when it opined that the liver was enlarged for physiological rather than pathological reasons. (Br., pp. 35-39) HVFG strongly disagrees.

ALDF cites 9 CFR 381.83 in support, but that regulation speaks in terms of abnormality. (Br., p. 36) The evidence presented to the district court undercuts this argument because the extra feeding approximates what a wild duck undertaking a migration would consume. Moreover, ALDF cites no authority for their purported definition of "abnormal."

ALDF's analogy to the FMIA (Br., pp. 36-37) is inapposite because the type of food poisoning spoken of is not the same as a liver enlarged by force-feeding. The liver is healthy regardless of the health of the duck. The language quoted by ALDF assumes that the liver is not healthy enough for human consumption.

ALDF argues that this case is comparable to *Am. Horse Prot. Ass'n v. Lyng*, 812 F.2d 1 (D.C. Cir. 1987). (Br., p. 37) HVFG strongly disagrees. The issue in *Lyng* focused on the agency's refusal to consider new and reputable research that supported a request to modify the existing regulations. The Court did comment that the agency's two-sentence response was insufficient but that comment was made in conjunction with research that specifically linked the requested rule to a problem within the agency's sphere of interest. The case made no global holding that would apply to the instant case and certainly did not require the agency to respond to every claim made by a petitioner.

ALDF then argues that this case "roughly tracks" *Massachusetts v. EPA*. (Br., pp. 37-38). HVFG disagrees. *Massachusetts* involved a situation where there

were no regulations controlling greenhouse gases which contribute to climate change. The petitioners were asking the EPA to put regulations into place. The EPA refused. The Supreme Court held that the EPA's reasons for not getting involved at all were inadequate. By contrast, in the instant case, there are regulations and USDA is enforcing those regulations against HVFG. Every duck is inspected, and only foie gras made from healthy livers are allowed to enter the human food supply. *Massachusetts* is simply inapposite.

ALDF argues that there is nothing ambiguous about the PPIA and that adulterated poultry products should be condemned. (Br., p. 38-39) However, the PPIA is clear that "adulterated" is synonymous with unsafe for human consumption. ALDF, without authority to do so, is advocating for a different definition so that food perfectly safe for human consumption would be condemned. The explanation given by USDA was more than satisfactory: Foie gras is safe to consume, and none of the voluminous materials supplied by ALDF establish a linkage between foie gras and human illness.

ALDF's final argument is a repeat of ALDF's position that their voluminous evidence supports their request for condemnation. (Br., pp. 39-41) However, it is clear from the argumentation on pages 40-41 that ALDF is focused on animal welfare and not human health. Even if the animal is suffering from various conditions, there is nothing in the PPIA or USDA's rules and regulations that

require condemnation for that reason. The sole issue for USDA is whether the foodstuff is safe for human consumption. If the answer to that question is "yes," then the food can enter the human food supply.

ALDF was able to persuade California to enact legislation against foie gras based on their animal welfare arguments. Cal. Health & Safety Code §§ 25980-25984 That effort suggests that ALDF's remedy is not the administrative agency or the federal courthouse. Their position is a policy position that should be directed at the Legislature.

## Conclusion

For all of the reasons stated, HVFG is respectfully asking the Court to affirm the district court's conclusion that subject matter jurisdiction is lacking. If this Court disagrees, HVFG is respectfully asking this Court to remand the case to the district court for further proceedings.

Respectfully submitted,

San Diego, CA
October 7, 2015

   /s/ Daniel J. Cross
Daniel Cross
Cross Law Corporation
9425 B Street, Suite 305
San Diego, CA 92101
(619) 756-6390 phone
(866) 203-3118 fax
www.crosslawcorp.com

**Certificate of Compliance**

I certify that, pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C) and Ninth Circuit Rule 32-1, the foregoing Brief of Hudson Valley Foie Gras, LLC is proportionately spaced, has a typeface of 14 points or more, and contains 6,487 words as counted by the word processing program used to produce this Brief.


Dated:  October 7, 2015

/s/ Daniel J. Cross

**Statement of Related Cases**

Pursuant to Ninth Circuit Rule 28-2.6, Amicus Curiae HVFG, LLC states that it is not aware of any related cases pending before this Court.

**Certificate of Service**

I hereby certify that on October 7, 2015, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


/s/ Daniel J. Cross